DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
(kdunn@dirllp.com)
JESSICA E. PHILLIPS (*pro hac vice*)
(jphillips@dirllp.com)
KYLE N. SMITH (*pro hac vice*)
(ksmith@dirllp.com)
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 240-2900

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
151 University Ave
Palo Alto, CA 94301
Telephone: (650) 815-4131

COOLEY LLP
KATHLEEN R. HARTNETT (SBN 314267)
(khartnett@cooley.com)
MARK R. WEINSTEIN (SBN 193043)
(mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN (SBN 260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000

BOBBY GHAJAR (SBN 198719)
(bghajar@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883 6400

PHILLIP E. MORTON (*pro hac vice*)
(pmorton@cooley.com)
1299 Pennsylvania Ave NW Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

Attorneys for Defendant *Meta Platforms, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC,<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.,<br><br>Defendant. | Case No. 3:25-cv-09579-VC<br><br>**ADMINISTRATIVE MOTION TO QUASH APEX DEPOSITION**<br><br>Trial Date: May 24, 2027<br>Date Action Filed: November 6, 2025 |
| CHICKEN SOUP FOR THE SOUL, LLC<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. | Case No. 3:26-cv-02333-VC<br><br>Trial Date: May 24, 2027<br>Date Action Filed: March 17, 2026 |
| CAMBRONNE INC., *et al.*<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. | Case No. 3:26-cv-03725-VC<br><br>Trial Date: May 24, 2027<br>Date Action Filed: December 22, 2025 |

| | |
|---|---|
| COGNELLA, INC.<br><br>Plaintiff,<br><br>v.<br><br>META PLATFORMS, INC.<br><br>Defendant. | Case No. 3:26-cv-04053-VC<br><br>Trial Date: May 24, 2027<br>Date Action Filed: May 4, 2026 |

## I. INTRODUCTION

Plaintiffs seek to depose Mark Zuckerberg, the CEO of one of the world's largest companies, on topics for which he possesses no unique knowledge. Having already sat for a 4.5-hour deposition in the *Kadrey* matter, he should not be subjected to duplicative, burdensome discovery. Because Plaintiffs cannot meet their heavy burden under the apex doctrine, their request for his deposition should be denied or, at minimum, deferred until after Plaintiffs complete scheduled fact and 30(b)(6) depositions. Should the Court order his additional deposition, it should impose strict limitations on topics, timing, and scheduling to prevent any abuse of his time.

## II. LEGAL STANDARD

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition) . . . such discovery creates a tremendous potential for abuse or harassment." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 263 (N.D. Cal. 2012). "For that reason, parties seeking to depose a high ranking corporate officer must first establish that the executive (1) has unique, non-repetitive, firsthand knowledge of the facts at issue in the case, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Groupion, LLC v. Groupon, Inc.*, 2012 WL 359699, at *2 (N.D. Cal. Feb. 2, 2012) (quoting *Affinity Labs of Tex. v. Apple, Inc.*, 2011 WL 1753982, at *15 (N.D. Cal. May 9, 2011)). Where "it appears unlikely that [the apex witness] has percipient knowledge of material facts, or if there are other witnesses who could testify to those facts from a similar vantage point, there is more reason to question whether the deposition is being sought for abusive rather than appropriate fact-finding purposes." *Largan Precision Co., Ltd. v. Motorola Mobility LLC*, 2024 WL 4980808, at *1 (N.D. Cal. Nov. 14, 2024).

## III. ARGUMENT

### A. Plaintiffs Have Not Met Their Burden

There is no dispute that Mr. Zuckerberg is an apex witness and that the apex doctrine applies. Ex. 1 ("Hr'g. Tr.") at 31:12-17. Plaintiffs have not established that he possesses "unique first-hand, non-repetitive knowledge of facts at issue in the case[s]," *Groupion*, 2012 WL 359699, at *2, and that there are no other witnesses who could testify to those facts, *Largan*, 2024 WL 4980808, at *1. To the contrary, Mr. Zuckerberg's December 2024 deposition testimony demonstrates that he lacks unique knowledge of

the issues raised by Plaintiffs' claims.[1] Plaintiffs' Complaints allege that Mr. Zuckerberg provided authorization to download a data source called Libgen to train Meta's Llama model. *See*, *e.g.*, *Entrepreneur*, Dkt. 1 ¶ 38. Mr. Zuckerberg has already been asked if he had "heard of Libgen" and answered, "No."[2] And his testimony further demonstrates his lack of unique knowledge with respect to Plaintiffs' broader claims as he denied knowledge of any issue concerning the use of copyrighted works in training AI models or communications within Meta regarding the same; denied knowledge of any Meta employee using torrenting to acquire works used to train Meta's AI models; and denied knowledge of any removal or alteration of copyright management information.

Tellingly, Plaintiffs have identified no document produced in discovery since David Boies (alongside eight other attorneys from multiple law firms) first took Mr. Zuckerberg's deposition that would necessitate a second deposition. Plaintiffs' proffered justifications[3] fail to satisfy the unique knowledge requirement of the apex doctrine.

***July 28, 2026, WSJ Opinion*** (cited at Dkt. 97 at 6). This piece references Meta only once, stating "Meta is committed to building with the principles of individual empowerment, invention and balance of power."[4] Elsewhere, it conveys, "I expect the economy will become more entrepreneurial with a greater number of people working at small businesses rather than larger companies." *Id.* These broad, uncontroversial statements do not bear on copyright infringement or fair use. *See also Affinity Labs,* 2011 WL 1753982, at *16 ("The mere fact that [a CEO] made public statements, even on issues that [the plaintiff] considers relevant to its claims, are insufficient to justify his deposition.").

***The "quality" of Meta's AI outputs and whether they substitute for or dilute the market for copyrighted works***. Dkt. 97 at 6–7. As to this broad topic, the Court has already recognized that "market dilution" is not an appropriate topic for Mr. Zuckerberg's deposition. *See* Hr'g. Tr. at 31:22–23. Plaintiffs recently deposed Damon Civin, a data science senior director whose role is to "measure

---

[1] All four cases assert the same claims. *See Entrepreneur*, Dkt. 1 ¶¶ 63–78; *Cognella*, Dkt. 1 ¶¶ 91–112; *Chicken Soup*, Dkt. 63 ¶¶ 89–110; *Cambronne*, Dkt. 192 ¶¶ 92–113.

[2] Meta would be pleased to provide the Court excerpts, but because the contents of Mr. Zuckerberg's first deposition are not reasonably contested here, it does not do so.

[3] This brief responds to the justifications of Plaintiffs as presented in the case management statements and July 31 conference. To the extent that Plaintiffs' response introduces new reasons or evidence, Meta respectfully requests an opportunity to respond.

[4] Mark Zuckerberg, "The AI Future Is for Everyone," WALL STREET JOURNAL (July 28, 2026), https://www.wsj.com/opinion/the-ai-future-is-for-everyone-a0c24e20?msockid=3e883e4167276eeb3a47292a663c6f75.

the performance of the products" of Meta's Superintelligence Lab "and the models that power them." Ex. 2 ("Civin Tr.") at 11:9–14. Mr. Civin answered questions about Meta's AI model outputs based on his experience and expertise. Civin Tr. at 106:25–107:6, 108:18–109:13. Plaintiffs also deposed Ranjan Subramanian, a senior data scientist, who testified extensively on these same topics and will sit for a second deposition on 30(b)(6) topics and can respond to further questions then regarding Meta AI's prompts and responses. *See, e.g.*, Ex. 3 ("Subramanian Tr.") at 8:15–17, 130:16–22, 140:23–142:9, 143:23–144:3; Dkt. 105 at 8.

***The "mid-2025 pivot from Meta AI to Meta Superintelligence Labs*.**" Dkt. 97 at 7. Entrepreneur's Complaint does not mention Meta Superintelligence Labs (MSL). MSL is simply an umbrella group for all of Meta's AI work. Civin Tr. at 10:21–23. The Gen AI group that developed Llama was incorporated into MSL along with other groups engaged in AI work. If information about MSL as an entity is relevant, it can be explored through the depositions of those involved in its day-to-day operations. *E.g.*, Civin Tr. at 9:13-18. As to the specific topic of Meta's "industrial-scale program of scanning physical books," Dkt. 97 at 7, referred to as "Project Vellum," Plaintiffs have recently questioned Melanie Kambadur, a research director within MSL. Ex. 4 ("Kambadur Tr.") at 18:12–17, 133:23–134:11. Ms. Kambadur also named a Meta employee with direct first-hand knowledge of the project who Plaintiffs have not yet deposed. Kambadur Tr. at 136:8–11. She did *not* name Mr. Zuckerberg. And several of Plaintiffs' 30(b)(6) topics go to the issue of data acquisition, including Project Vellum. *See, e.g.*, Ex. 5 (noticing 30(b)(6) deposition topics concerning Llama 4 data sources and Project Vellum). Meta will produce a corporate witness prepared to provide relevant information on those topics.

***"The licensing market" [for Entrepreneur's works].*** Dkt. 97 at 7. It is unclear why Plaintiffs believe Meta's CEO has unique knowledge of their "licensing market." He repeatedly testified that he did not know or remember details concerning Meta's licensing agreements and was not aware of the organizations or companies with which Meta had agreements. There is no testimony or documents that suggest this answer is different today. The "licensing market" issue is one of Plaintiffs' 30(b)(6) topics,[5]

---

[5] "Meta's consideration, negotiation, or valuation of licensing or purchasing books, magazines, or professional or instructional content for use with the MODELS, and any internal assessment of the cost, availability, or existence of a market for such licenses or purchases."

for which Meta will provide a knowledgeable corporate witness. Ex. 5 at 4. And Plaintiffs recently deposed Didem Foss, who has worked on AI data licensing since early 2024. Ex. 6 ("Foss Tr.") at 40:4–41:4. Ms. Foss provided the unique first-hand knowledge of this topic that Mr. Zuckerberg lacks. Plaintiffs will also depose Shelley Venus, a senior director for content business development and strategy at Meta, who has further knowledge relating to certain licenses.

***Intentionality or Willfulness.*** Plaintiffs imply that they would like to depose Meta's CEO because information about willfulness is relevant to damages. Again, Plaintiffs cite nothing involving Mr. Zuckerberg, uniquely, since his December 2024 deposition that bears on Meta's alleged "willfulness." Their complaints attack the same conduct at issue in *Kadrey* (*i.e.*, the downloading, use, and alleged distribution of works to train Llama) without identifying any superseding event. Regardless, courts have rejected this justification for apex depositions. *See Jensen v. BNSF Ry. Co.*, 2015 WL 3662593, at *3 (N.D. Cal. May 19, 2015) (barring an apex deposition where "additional questions relevant to punitive damages [could] be addressed through the Rule 30(b)(6) witness.").

***Identifying Additional Witnesses.*** Plaintiffs suggest they want to depose Mr. Zuckerberg to identify additional relevant witnesses, Hr'g. Tr. at 38:10–21. This inverts the doctrinal requirement that other sources of knowledge be exhausted *before* deposing an apex executive.

Plaintiffs have not exhausted less intrusive means of discovery. *See, e.g.*, *Anderson v. Cnty. of Contra Costa*, 2017 WL 930315, at *4 (N.D. Cal. Mar. 9, 2017) (denying a request to depose an apex witness and requiring that plaintiffs "depose a Rule 30(b)(6) witness" and "then meet and confer with Defendants about the necessity and scope" of the witness's deposition); *Affinity Labs*, 2011 WL 1753982, at *14. Plaintiffs have not completed their 30(b)(6) depositions, including on topics that ***overlap directly*** with the topics about which they wish to question Meta's CEO. *See, e.g.*, Exhs. 5 & 7. As shown, Plaintiffs have not exhausted the numerous fact witnesses who possess superior, ***direct*** knowledge of the topics for which they seek Mr. Zuckerberg's testimony: Plaintiffs intend to depose at least 10 additional fact witnesses. *See* Dkt. 107 at 3–4. For those witnesses recently questioned about the requested topics (Mr. Civin, Ms. Kambadur, and Ms. Foss), Plaintiffs have not explained why Meta's CEO's additional testimony is required. At a minimum, Plaintiffs should be precluded from taking Mr. Zuckerberg's testimony unless and until such "less intrusive means of discovery . . . have

been exhausted without success." *Groupion*, 2012 WL 359699, at *2.

**B. Any Deposition Should Be Limited**

**Timing:** As ordered by the Court, Meta is working to identify a date for Mr. Zuckerberg's deposition prior to August 26. Meta respectfully requests relief from that deadline. To avoid duplication and harassment, no deposition of Mr. Zuckerberg should occur until depositions of 30(b)(6) and other fact witnesses are substantially complete. Plaintiffs have noticed more than *forty* 30(b)(6) topics and Meta has agreed to produce six witnesses covering these topics, each of whom will provide robust corporate testimony. One such designee on multiple 30(b)(6) topics is scheduled to be deposed on August 26-28. *See* Dkt. 97 at 4–5. After those depositions, the Court should order Plaintiffs to meet and confer with Meta on what, if any, additional information they require from Mr. Zuckerberg and their basis for believing that he uniquely possesses that information, and present that to the Court.

**Scope**: To avoid abusive and uninformative redundancy, Meta asks the Court to preclude Plaintiffs from asking Mr. Zuckerberg about events predating his December 2024 deposition unless they can show he has unique personal knowledge of the events and his prior *Kadrey* testimony does not already address the topic. For events postdating his 2024 deposition, they should be required to explain how these events are relevant to their claims and demonstrate he has unique personal knowledge.

**Length**: Given the limited topics (if any) on which Plaintiffs have valid grounds to depose Mr. Zuckerberg, and to protect against abuse of Mr. Zuckerberg's time, his deposition should be limited to two hours. *See, e.g.*, *Apple*, 282 F.R.D. at 265 (limiting Samsung CEO's deposition to two hours). Based on the extent of the deponent's unique, firsthand, relevant knowledge, and the exhaustion of other discovery methods, *see id*. at 263–64, courts frequently limit the length of an "apex" deposition to two hours. *See, e.g.*, *Finisar Corp. v. Nistica, Inc.*, 2015 WL 3988132, at *4 (N.D. Cal. June 30, 2015); *In re Transpacific Passenger Air Transp. Antitrust Litig.*, 2014 WL 939287, at *6 (N.D. Cal. Mar. 6, 2014). That approach is particularly warranted here, where Mr. Zuckerberg already sat for a 4.5-hour deposition in *Kadrey*; a total of 6.5 hours of deposition time of Mr. Zuckerberg is more than proportionate to the needs of the case.

Dated: August 6, 2026

By: */s/ Karen L. Dunn*
Karen L. Dunn

DUNN ISAACSON RHEE LLP
KAREN L. DUNN (*pro hac vice*)
(kdunn@dirllp.com)
JESSICA E. PHILLIPS (*pro hac vice*)
(jphillips@dirllp.com)
KYLE N. SMITH (*pro hac vice*)
(ksmith@dirllp.com)
401 9th Street, NW
Washington, DC 20004
Telephone: (202) 240-2900

COOLEY LLP
KATHLEEN R. HARTNETT (SBN 314267)
(khartnett@cooley.com)
MARK R. WEINSTEIN (SBN 193043)
(mweinstein@cooley.com)
ELIZABETH L. STAMESHKIN (SBN 260865)
(lstameshkin@cooley.com)
3175 Hanover Street
Palo Alto, CA 94304
Telephone: (650) 843-5000
Facsimile: (650) 849-7400

COOLEY LLP
BOBBY GHAJAR (SBN 198719)
(bghajar@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, CA 90401
Telephone: (310) 883 6400
Facsimile: (310) 883 6500

COOLEY LLP
PHILLIP E. MORTON (*pro hac vice* forthcoming)
(pmorton@cooley.com)
1299 Pennsylvania Ave NW Suite 700
Washington, DC 20004
Telephone: (202) 842-7800

CLEARY GOTTLIEB STEEN & HAMILTON LLP
ANGELA L. DUNNING (212047)
(adunning@cgsh.com)
151 University Ave
Palo Alto, CA 94301
Telephone: (650) 815-4131

Attorneys for Defendant
*META PLATFORMS, INC.*

**FILER'S ATTESTATION**

I, Karen L. Dunn, am the CM/ECF user whose ID and password are being used to file this Administrative Motion to Quash Deposition. Pursuant to Civil Local Rule No. 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from each of the other signatories.

Dated: August 6, 2026

By: /s/ *Karen L. Dunn*
Karen L. Dunn (*pro hac vice*)