September 11, 2026

Via ECF

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: ***Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*; Case No. 3:26-cv-02333-VC**
Joint Letter Brief RE: Meta's Motion to Compel Plaintiff's Interrogatory Responses

Dear Magistrate Judge Hixson:

Defendant Meta Platforms, Inc. ("Meta") and Plaintiff Chicken Soup for the Soul, LLC ("Chicken Soup"), parties to the above-captioned action, submit this letter brief regarding Chicken Soup's responses and objections to Meta's First Set of Interrogatories, attached as Exhibit A, and Chicken Soup's supplemental responses and objections, attached as Exhibit B. Meta identified these deficiencies in writing on June 24, 2026, and again in detail on August 6, 2026. The parties met and conferred on August 14, 2026. Meta sent Chicken Soup its portion of a draft letter brief on August 17, 2026, and Chicken Soup served its supplemental responses on August 18, 2026, narrowing the parties' dispute. The parties are now at an impasse.

## I. META'S POSITION

Chicken Soup's responses to Meta's interrogatories reflect the same deficient and half-hearted approach that Chicken Soup has taken with respect to all discovery in this matter. Chicken Soup's responses do not attempt to answer the questions asked, let alone fully answer them as the rules require. Instead, Chicken Soup relies on platitudes about what its "ongoing" investigation and future productions will show, and on documents identified by bates range that reflect a misunderstanding, at best, and an abuse, at worst, of Rule 33(d) of the Federal Rules of Civil Procedure. Fact discovery is closed, and Meta still knows virtually nothing about what facts, if any, Chicken Soup contends support its allegations. Breadth is not a basis to answer nothing. A party that cannot answer in full must answer "to the best of [its] ability and … state what [it] is not able to provide." *Davis v. Pinterest, Inc.*, 2021 WL 5177837, at *3 (N.D. Cal. Nov. 8, 2021) (Hixson, M.J.). Nor is deposition testimony a substitute for interrogatory responses. Depositions and interrogatories "serve different functions." *Covino v. Spirit Airlines, Inc.*, 2021 WL 2955898, at *2 (D. Nev. July 14, 2021). Meta respectfully requests that the Court order Chicken Soup, within five days of its Order, to serve amended responses to the following interrogatories that answer each question asked, without reliance on Rule 33(d) except where appropriately applied.

**Interrogatories 1, 2 & 6:** Interrogatories 1, 2, and 6 ask Chicken Soup to identify and describe information related to the individuals involved in creating or claiming ownership of the asserted works. Chicken Soup's responses state no facts, invoke Rule 33(d), and assert the information "is reflected in" its works, registrations, and agreements,identified by Bates range. But the identified Bates ranges do not answer the interrogatories. For instance, contributor names are scattered through the 142,652 pages of work text, and requested compensation terms are in the contributor agreements, of which Chicken Soup cites only 1,359 pages, which cannot account for all contributors to hundreds of anthologies collecting scores of stories apiece. An "answer to an interrogatory must be responsive to the question" and "should be complete in itself and should not refer to . . . other documents." *Logtale, Ltd. v. IKOR, Inc.*, 2013 WL 3967750, at *3 (N.D. Cal. July 31, 2013). It is "inappropriate" for Chicken Soup to invoke Rule 33(d) by saying it "may not possess or track [the requested information] at the requested level of detail" because a party that says it lacks the information concedes "the answer to the rog cannot be determined by examining the cited record[.]" *Morris v. Wells Fargo & Co.*, 2026 WL 263206, at *2 (N.D. Cal. Feb. 2, 2026) (Hixson, M.J.). Even if Chicken Soup can properly invoke Rule 33(d), references to "subsequently produced responsive business records" or a promise to identify documents later is not "good enough." *Gaby's Bags, LLC v. Mercari, Inc.*, 2021 WL 211639, at *1 (N.D. Cal. Jan. 21, 2021) (Hixson, M.J.); *see Andersen v. Stability AI Ltd.*, 2026 WL 366836, at *4 (N.D. Cal. Feb. 10, 2026).

**Interrogatory 3:** Interrogatory 3 asks Chicken Soup to identify each instance (including by providing date, person, and agreement) in which another person was licensed to exercise any Section 106 rights. Chicken Soup cites its licensing agreements and stops—identifying not one license, licensee, or date. Interrogatory 3 is not an RFP, and a citation to a body of agreements does not answer the question asked. *Logtale*, 2013 WL 3967750, at *3. Nor do the licensing agreements necessarily contain all of this information, which defeats the assertion of Rule 33(d).

**Interrogatory 5:** Interrogatory 5 asks Chicken Soup to describe each asserted work and provide specific details (such as its title, number and date of registration, date of first publication, current owner, and chain of title). Chicken Soup responds not by providing any description or any of the details requested, but by stating it has produced copyright registrations, publishing agreements, licensing agreements, and a purchase agreement at specific Bates numbers "which

contain information responsive to this interrogatory, including title, U.S. Copyright registration number, registration date, author(s), current owner, and chain of title agreements, if relevant." Rule 33(d) is inapplicable because extracting per-work facts from Chicken Soup's own registrations and agreements is not a burden "substantially the same for either party." *Gamevice, Inc. v. Nintendo Co.*, 2019 WL 2763008, at *2 (N.D. Cal. July 2, 2019) (Hixson, M.J.). And even if Rule 33(d) applies, it does not permit Chicken Soup to avoid any narrative response to Interrogatory 5 because, by Chicken Soup's *own* admission, the cited materials do not include all of the information requested, including dates of first publication or a complete description of the works. Nor do registrations or the texts themselves necessarily include the current owner or chain-of-title agreements. At a minimum, the Court should order Chicken Soup to provide a narrative response that provides pertinent information that is not contained within the cited materials.

Despite citing its copyright registrations and agreements, Chicken Soup claims it cannot state "on a work-by-work basis, which exclusive right was infringed as to each Asserted Work" because Meta has not provided certain information about the Asserted Works. But that is not true. Meta has undertaken searches and produced information identifying Chicken Soup works that Meta obtained and/or used for training, and Chicken Soup must attempt to answer to the best of its ability and state what it is not able to provide. *Davis*, 2021 WL 5177837, at *3. It is not credible for Chicken Soup to claim it cannot even do that because it "must have known something about" the allegations it made in its Complaint. *FTC v. Uber Techs., Inc.*, 2026 WL 1031062, at *3 (N.D. Cal. Apr. 16, 2026) (Hixson, M.J.).

**Interrogatory 7:** Interrogatory 7 asks Chicken Soup to describe when and why it made *each* work available to the public. Chicken Soup's supplemental response describes a "Free Stories" section, newsletters containing "complete stories," and e-books made "temporarily available for free"—all at the level of the category, not the work. It gives one dated example from its catalog spanning 33 years: the *Chicken Soup for the Soul 20th Anniversary Edition*, made free in 2020, and says it "does not maintain a record identifying the dates" on which works were "made available for preview or review purposes." A professed lack of records does not excuse Chicken Soup from making a "reasonably diligent effort" to answer the interrogatory as to each work. *Morris* , 2026 WL 263206, at *2.

**Interrogatory 8:** Interrogatory 8 asks Chicken Soup to describe the authorized channels through which the asserted works have been made available, identifying each channel and the dates each work was first and last available it. Chicken Soup names no channel at all and asserts it "does not maintain records tracking" availability. Chicken Soup plainly can name channels when it suits it: its answer to Interrogatory 7 identifies Amazon Kindle, Barnes & Noble Nook, Google, and Apple Books by name. Chicken Soup must make a reasonably diligent effort to answer that question "to the best of his ability" and "to state what information sought" it "is not able to provide." *Davis*, 2021 WL 5177837, at *3.

**Interrogatories 9 & 10:** Interrogatories 9 and 10 ask Chicken Soup to describe "all facts" supporting its contention that Meta caused it any form of harm, including by identifying each asserted work whose market it contends is harmed, the identity of the purported market for each such asserted work, and a "detailed explanation" of how Meta AI caused such harm. Chicken Soup's response recites the allegations of its Complaint without providing any facts about any asserted work, its market, or harm to it. Chicken Soup claims it "will identify the material facts supporting its contentions" at some future point, such as in its expert reports. But it must do so now. If there are any facts supporting its contention of harm, Chicken Soup would know it, including for example based on its sales or licensing history. If Chicken Soup does not have any

facts demonstrating harm, it must say that. *Abante Rooter & Plumbing, Inc. v. Total Merch. Servs., LLC*, 2020 WL 4036386, at *2 (N.D. Cal. July 17, 2020) (Hixson, M.J.). Chicken Soup cannot avoid its obligation to fully answer contention interrogatories by hiding behind future expert discovery. *See Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1003 (N.D. Cal. 2019) (allowing a party to "wait" for expert reports "would forfeit the benefits of contention interrogatories").

**Interrogatory 11:** Interrogatory 11 asks Chicken Soup to describe its "processes, procedures, and/or guidelines" related to the use of generative AI by its employees or contractors. Chicken Soup's response references "policies and practices for its authors" but does not provide any description of any policies, procedures, or guidelines for its employees or contractors. Chicken Soup must answer the questions asked. *Logtale*, 2013 WL 3967750, at *3; *BSD Crown, Ltd. v. Amazon.com, Inc.*, 2026 WL 1755357, at *2 (N.D. Cal. June 17, 2026) (Hixson, M.J.). If Chicken Soup does not have any processes, procedures, and/or guidelines related to its employees or contractors, it must say that. *Abante Rooter*, 2020 WL 4036386, at *2.

**Interrogatories 12 & 13:** Interrogatories 12 and 13 ask Chicken Soup to describe all facts supporting its allegations that Meta transmitted or uploaded to any third party any of Chicken Soup's asserted works during and via torrenting or contributed to third-party infringement of any of the asserted works, respectively. Chicken Soup answers both interrogatories with the same paragraph about Meta's torrenting, drawn from the *Kadrey* record and a blanket reference to "Meta's documents and testimony," and provides no facts about Chicken Soup's asserted works in particular. Chicken Soup admits that it cannot presently identify a particular torrenting participant or provide any additional response due to its ongoing investigation. Discovery is closed. If Chicken Soup knows of no facts to support its allegations, Meta is entitled to know that now. *Abante Rooter* , 2020 WL 4036386, at *2.

## II. CHICKEN SOUP'S POSITION

The main issue driving Meta's complaints about Plaintiff's Interrogatory responses is that the Interrogatories are designed to create a dispute about how they are answered, rather than being designed to *be answered*. Meta has framed its questions in breathtakingly broad terms and satisfactory answers would not be possible. At heart, the Interrogatories are overly burdensome and disproportionate to the needs of the case.

Meta's **Interrogatory 1** gives Meta's strategy away at the jump. It is an "all facts regarding" interrogatory asking about every person having "a role in" the creation of every one of Chicken Soup's works. The interrogatory is overbroad on its face, as a book could be written about how any other book was created, and still fail to disclose "all facts regarding" every person having anything to do with that creation. There are six listed subparts, although the interrogatory does not limit itself to them. If Chicken Soup attempted a narrative response and even just ten people "had a role" in the creation of the first work considered, the six subparts of this interrogatory applied to those ten people would exhaust the limit on interrogatories available to Meta. Applied to the full number of people who could be said to have had something to do with the creation of any of Chicken Soup's works yields tens or even hundreds of thousands of interrogatories, but even if that sea of answers rolled in, Meta could still complain it had not been told "all facts" about every "person" who "had a role" in each work's creation. "[A] request or interrogatory is overly broad or unduly burdensome on its face if it (1) uses an omnibus term such as 'relating to' or 'concerning,' and (2) applies to a general category or group of documents or a broad range of information." *Cutera, Inc. v. Lutronic Aesthetics*, No. 2:20-CV-0235 KJM DB, 2022 WL 1444314, at *1 (E.D. Cal. May 6, 2022), *quoting Moses v. Halstead*, 236 F.R.D. 667, 674 (D. Kan. 2006).

Meta's **Interrogatory 2** likewise requests an unfathomable ocean of information: "[A]ll facts regarding all persons" who claim to have an ownership interest in Chicken Soup's works, including names, contact information, description of ownership, and identification of supporting documents. It includes no limitation as to time, expressly includes the Plaintiff and at least each textbook author and has four subparts applicable to work – so four times the number of works in the case times the number of people identified, never fewer than two – again, thousands and thousands of subparts, and of course answering the subparts would not be enough, Meta demands "all facts" regarding "all persons." Plaintiffs have responded with what could be imagined to be material and Meta says it is not enough. But the vastly overbroad interrogatory, as Meta chose to frame it, could never be fully answered (and that was the point). *See Batts v. Cnty. of Santa Clara*, No. C 08-00286 JW, 2010 WL 545847, at *4 (N.D. Cal. Feb. 11, 2010) (affirming denial of motion to compel because "in order for Defendants to exhaustively 'state all facts' to which at least fifteen individuals have knowledge in connection with Laila Batts and/or the claims raised in this litigation," Defendants would have to undertake a costly and time-consuming investigative process. Such a broad and unfocused inquiry would likely produce as much extraneous and secondary information as useful and relevant information.").

Meta's **Interrogatory 6** (following the sequence in Meta's portion of the letter) is yet another "all facts" interrogatory. Meta wants all facts about any "individuals who wrote any portion of an ASSERTED WORK" and demands that the Plaintiffs' narratively describe every fact related to how the Plaintiffs' assert ownership of any part of their work containing anyone else's writing. This appears to call for all facts related to anyone who authored a component of the book, a story within it, or was quoted in a book (Chicken Soup creates anthologies of stories, so it publishes books with many, many contributors) and Meta demands this interrogatory be separately answered for every appearance of any other writer's material. Chicken Soup again attempted to respond with what could possibly be material under this vast umbrella. That is more than fair, considering the interrogatory is overbroad on its face, and Meta has nothing to complain about. *Cutera, Moses, Batts, supra*.

Meta's licensing question in **Interrogatory 3** asks for instances of licensing of rights to Plaintiff's works. Chicken Soup responded by stating it will produce the licensing agreements it possesses (and Chicken Soup has done so) – the reasonable place to find the specific pieces of information Meta asked for (a date, the person or entity involved, and the agreement). Meta insists this straightforward process of delivering the information is somehow unfair. But Chicken Soup's response is entirely *reasonable and proportional*, two things that are lacking in Meta's approach, and Meta does not even say what else is supposed to be done with an interrogatory like this. It is not entitled to have each license that exists retyped into a narrative response that says what the license already says.

Meta's **Interrogatory 5** asks for a "description" of each asserted work. But is well understood that Meta already has more than that – it has each whole work, and every one of them. The nine subparts of this interrogatory are answered in the work itself ("title," "copyright office registration number," "a description of the work," "author(s)" "date of first publication") in the documents produced "current owner" "any chain of title agreements") and in publicly available records. Chicken Soup has asserted violations of Sec. 106(1)-(3) and otherwise refers Meta to the Complaint.

Meta's **Interrogatory 7** asks for irrelevant information Plaintiff does not maintain. It appears to be an attempt to frame an excuse for Meta's piracy and may amount to asking Chicken Soup "why didn't you stop us from stealing your work?" But Chicken Soup is not required to give

what they don't have. The interrogatory is also incoherent in asking when even a mere promotional excerpt would have been available on the web – Meta doesn't limit the scope to any time and Chicken Soup would have no way to investigate every availability of any portion of their work anywhere online. Chicken Soup attempted to provide a general description of when and how this might and has occurred on its own site and Meta has not in its letter or in any meet-and-confer been able to give any reason this information is relevant at all, or why Chicken Soup would possess it.

**Interrogatory 8** has been answered with the information available to Chicken Soup. Meta can show no case-specific reason Chicken Soup should be required to further investigate as to any of this information that it does not have. The information could conceivably be obtained from the third parties Chicken Soup identified months ago, but Meta has not sought it from those parties, perhaps because that would not serve the purpose of proliferating a discovery dispute.

**Interrogatories 9 and 10** return to Meta's "all facts" technique. They are therefore overbroad on their face. *Cutera*, *Moses*, *supra*; *see also Zhdanovich-Doty v. Provident Life & Accident Ins. Co.*, No. 24-CV-04829-YGR (RMI), 2026 WL 1189722, at *1 (N.D. Cal. Apr. 30, 2026).

Moreover, Chicken Soup has only just recently received from Meta even a list of which works were taken and has *yet to receive Meta's answers on what precisely it did with them* [*see* Three C's motion to compel]. As stated in Chicken Soup's response, those answers from Meta are critical to an analysis of market harm being performed. Meta cannot demand the analysis while it withholds the desiderata. Plaintiff recognizes that this is part of their case, but Meta is here a victim of its own obstinacy in refusing to answer basic questions about its own conduct that necessarily underpin the scope of the harm to Chicken Soup. The market analysis which will be conducted by experts will be produced when it has been conducted, which will not be before Meta fairly answers basic questions about when and how it used Chicken Soup's works.

**Interrogatory 11** has no apparent relevance but Meta has not only Chicken Soup's general answer but has deposed its employees and 30(b) representatives on this topic and has whatever Chicken Soup has to give on it.

**Interrogatory 12 and 13** are further "all facts" interrogatories, this time aimed at what Plaintiff knows about Meta's torrenting conduct that Meta has refused for months to answer regarding [again, *see* Three Cs' motion to compel]. Chicken Soup recently extracted some admissions from Meta regarding this conduct in the 30(b)(6) deposition process and could conceivably supplement with that information when transcripts are finalized, to the extent that is a useful exercise. Plaintiff also expects that Meta will be compelled to answer Chicken Soup's interrogatories on this conduct, and that could also form the basis of a supplement, although there is an obvious risk of a looped process if that is deemed necessary. The fact of Meta's torrenting is established, and by necessary implications of the use of torrenting software, so is the fact of Meta re-torrenting to third parties. Meta has not disclosed logs of IP addresses or other information about whom it shared Plaintiffs' works with, but in the end *Meta is uniquely the source of this information* and its complaints that Plaintiffs won't provide it are unrealistic.

Dated: September 11, 2026

Respectfully submitted,

By: /s/ Kyle N. Smith
Kyle N. Smith
Attorneys for Meta Platforms, Inc.

By: /s/ Lauren E. Martin
Lauren E. Martin
Attorneys for Chicken Soup for the Soul, LLC.