September 11, 2026

Via ECF

The Honorable Thomas S. Hixson
United States District Court for the Northern District of California
San Francisco Courthouse, Courtroom E – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re: *Chicken Soup for the Soul, LLC v. Meta Platforms, Inc.*; Case No. 3:26-cv-02333-VC
**Joint Letter Brief RE: Meta's Motion to Compel Plaintiff's Responses to Requests for Admission**

Dear Magistrate Judge Hixson:

Defendant Meta Platforms, Inc. ("Meta") and Plaintiff Chicken Soup for the Soul, LLC ("Chicken Soup"), parties to the above-captioned action, submit this letter brief regarding Chicken Soup's responses and objections to Meta's First Set of Requests for Admission, served August 31, 2026 and attached as Exhibit A.

## I. META'S POSITION

Plaintiffs claim that Meta has failed to meet and confer about the RFA responses as to Chicken Soup. This assertion puts form over substance. After the Chicken Soup, Cognella, and the Plaintiffs in Cambronne all filed their responses and objections to Meta's RFAs on August 31, 2026, the parties met and conferred on September 9, 2026, at Meta's request. Meta explained, by reference to the Cognella responses, that it objected to the approach of objecting to Meta's defined terms to narrow and reinterpret the requests that Meta served. This approach was uniform across all of the 3C cases, including Chicken Soup, as Plaintiffs' counsel well knew since they represent all of the Plaintiffs in each case. There is no question that Chicken Soup was on notice of Meta's objection to their approach to the RFA responses. And that is evident by the fact that each of the 3C responses to Meta's letter brief on this issue are essentially identical.

Chicken Soup refused to answer 96 of Meta's RFAs outright, saying only that it "cannot truthfully admit or deny the Request as phrased." And rather than simply admitting or denying the remaining 325 as propounded, Chicken Soup evaded Rule 36 by asserting boilerplate objections to Meta's defined terms as "vague, ambiguous, overbroad, or inconsistent with the ordinary meaning of the term(s)" and narrowing or reinterpreting the request "using the term(s) as reasonably understood in context"—without disclosing what narrower question Chicken Soup was answering. Only then did Chicken Soup admit or deny, depriving Meta of the certainty its RFAs were supposed to produce. Meta asks the Court to overrule Chicken Soup's objections and order it to serve amended responses to all of Meta's RFAs, answering each request as propounded, within five days of its Order.

Chicken Soup wholesale refused to answer Requests Nos. 294 through 388, which ask Chicken Soup to admit, work by work, that one or more third parties wrote one or more portions of a named asserted work, each identified by title and copyright registration number. Its response to each is the same: "Plaintiff cannot truthfully admit or deny the Request as phrased." Rule

36(a)(4) does not permit that. Where a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it." A party may assert lack of knowledge as its reason "only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." Not one of Chicken Soup's 96 refusals contains any such statement. Chicken Soup instead objects that "THIRD PARTIES" excludes "YOU," that "YOU" is defined to include Chicken Soup's own officers, employees, and agents, and that it therefore "cannot determine from the Request which authors Meta intends to characterize as 'THIRD PARTIES.'" But wherever that line is drawn, Chicken Soup knows who wrote its books, and Rule 36(a)(4) required it to admit what it could and qualify or deny the rest. Chicken Soup could have admitted that persons other than its officers, employees, and agents contributed to a work, or denied it, and identified the line it was drawing. It did neither, ninety-five times. The same is true of the ninety-sixth refusal, No. 79, which asks Chicken Soup to admit that one or more non-employees are identified as authors of asserted works not registered as works made for hire.

Rule 36(a)(4) requires that "[a] denial must fairly respond to the substance of the matter," and that where good faith requires a qualified answer, "the answer must specify the part admitted and qualify or deny the rest." It is not proper for a responding party to selectively narrow a request and then answer it as narrowed. In *Pellerin v. Wagner*, for example, the court granted a motion to compel where denials did "not fairly respond to the substance of the matters presented" and "respond[ed] to a different question," and ordered the party to "supplement [its] responses to these RFAs so that they fairly respond to the actual matters presented." 2016 WL 950792, at *4 (D. Ariz. Mar. 14, 2016). And in *Netlist Inc. v. Samsung Electronics Co.*, admitting receipt of "a letter dated May 27, 2020, not that it received Netlist's letter," "serve[d] as a denial" and "failed to admit" the request. 341 F.R.D. 650, 671 (C.D. Cal. 2022). In that case, the substitution of words ("a letter dated …" versus Netlist's specific letter) was clear on its face, yet improper; here, Chicken Soup's revised interpretations are both unclear and improper. *See also Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994) (parties "should not seek to evade disclosure by quibbling and objection," but "should admit to the fullest extent possible, and explain in detail why other portions of a request may not be admitted").

Beyond the pages of "General Objection" incorporated by reference into each of its RFA responses, Chicken Soup repeats the identical block of objections in 413 of its 421 responses: it objects to each defined term used in the request ("YOU," "ASSERTED WORKS," "DOCUMENTS EVIDENCING," etc.) as "vague, ambiguous, overbroad, or inconsistent with the ordinary meaning of the term(s)," then states it "responds using the term(s) as reasonably understood in context"—without ever saying what that understanding is. *See, e.g.*, Ex. A, Resp. to RFA Nos. 1-4 (also objecting that it does not understand what "unaware of" means), 6, 9, 13-21, 36, 54-68 (repeating this approach). The boilerplate objections were to terms (as above) *that Meta specifically defined* and that the parties have used throughout their pleadings and discovery (*e.g.* "ASSERTED WORKS"). These objections should be stricken. *See Thompson v. Yates*, 2011 WL 5975469, at *3 (E.D. Cal. Nov. 29, 2011) ("declin[ing] to consider objections raised in boilerplate language" and requiring responding party to respond further to seventy requests for admission); *AECOM Energy & Constr., Inc. v. Ripley*, 2018 WL 6266462, at *6 (C.D. Cal. Oct. 3, 2018) ("Boilerplate objections of any type are improper in federal court."); *U.S. ex rel. Englund v. L.A. Cnty.*, 235 F.R.D. 675, 685 (E.D. Cal. 2006) ("Ambiguity" is no objection unless the request is "so ambiguous that the responding party cannot, in good faith, frame an intelligent reply.").

Chicken Soup's improper objections and revisionist approach infected many of its responses. As one example, several pairs of RFA responses reveal an inconsistent and obstructionist approach. Request No. 37 asks Chicken Soup to admit that Meta did not create the Books3 dataset; Chicken Soup raised no objections and answered by disclaiming knowledge sufficient to admit or deny—though the answer is widely known in the industry. No. 38 asks Chicken Soup to "[a]dmit that YOU *do not contend* that Meta created the Books3 dataset" (emphasis added); there, Chicken Soup objected that Meta's defined term "YOU" is "vague, ambiguous, overbroad, or inconsistent with the ordinary meaning of the term(s)." It then denied that RFA—suggesting it *may be* contending Meta created a dataset regarding which, in No. 37, Chicken Soup disclaimed sufficient information to say whether Meta had created. Meta's definition of "YOU" (in No. 38) does not change the meaning of the RFA, nor is it credible that Chicken Soup doesn't understand No. 38 but understands No. 37. The same juxtaposition repeats through Request No. 46 (where Meta alternatively asked Chicken Soup to admit Meta did not create certain third-party datasets (*e.g.*, Libgen, The Pile, Z-Library, and Bibliotik) and separately, to admit that it does not contend Meta created those datasets. Meta cannot tell Chicken Soup's position from its evasive responses. And because responses to different RFAs are at odds with each other, Meta further cannot tell the basis of those positions. Chicken Soup should answer these RFAs without obfuscation.

Chicken Soup's objections also reach terms that appear nowhere in the requests they answer—meaning Chicken Soup read those requests to say something Meta did not, and again never made that explicit. For example, Nos. 408 and 414 object to a defined term "S," which Meta neither defined nor used. No. 90 objects to "collect-work registrations," but the request uses the term "collective-work registrations" (which is a term defined by copyright law), *see, e.g.* https://copyright.gov/eco/help-collective-work.html. Nos. 85 and 86 ask whether Chicken Soup analyzed "META AI MODELS" as the cause of its alleged sales decline and market harm. Nos. 87 and 88 ask the same two questions about "Generative AI" generally. Chicken Soup objected to all four that "META AI MODELS" and "THIRD PARTY" are vague — terms that appear only in the first pair — and denied all four. Meta cannot tell whether Chicken Soup denies conducting any generative-AI analysis or only one directed to Meta's models. Tellingly, Chicken Soup's response to No. 97 begins: "Plaintiff objects to the defined+B1:B97 terms 'YOU', 'YOUR', as used in this Request." The stray "+B1:B97" is a spreadsheet cell reference, served to Meta as part of Chicken Soup's sworn response.

RFA Nos. 1-6, 9, 13-14, 21, and 36 ask Chicken Soup to admit it is "unaware of" or "not aware of" specific categories of harm or evidence (*e.g.*, lost sales, lost licensing opportunities, documents evidencing injury). Chicken Soup objected that "unaware of" or "not aware of" (as the case may be) is "vague and ambiguous," "responds using the term(s) as reasonably understood in context," and then denied these requests, without disclosing whether it is denying because it is aware of something responsive, or because it has simply redefined "unaware of" to mean something narrower than the ordinary meaning of the phrase. As one point of comparison, Meta propounded and received responses to nearly identical requests from the *Kadrey* plaintiffs without any gripe over what "unaware of" or "documents evidencing" mean. Due to Chicken Soup's approach, Meta cannot tell from these responses what facts Chicken Soup is actually asserting on the question at the heart of the fourth fair-use factor: whether Chicken Soup can identify a single lost sale or lost licensing opportunity. Chicken Soup must answer these RFAs, as written. *See Jones v. Cooper*, 2010 WL 2816323, at *4 (E.D. Cal. July 16, 2010) (ordering answers to RFAs

regarding "no evidence" supporting allegations in the complaint, and warning that a party who fails to admit a request later proven true may be liable for the requesting party's costs of proof).

Given Chicken Soup's insufficient Rule 36 responses, Meta asks the Court to "order an amended answer." *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981). In particular, the Court should order Chicken Soup to "answer the request[s] without further objection, either admitting or denying [each] request as required by Fed. R. Civ. P. 36(a)," under caution "that failure to comply will result in its admission." *Englund*, 235 F.R.D. at 686.

## II. CHICKEN SOUP'S POSITION

Meta has failed to meet and confer about this issue as to the Chicken Soup plaintiffs, a pre-requisite to filing this Letter Brief. This district's Local Rule 37-1(a)[Procedures for Resolving Disputes] is clear:

> **(a) Conference Between Counsel Required.** The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues. If counsel for the moving party seeks to arrange such a conference and opposing counsel refuses or fails to confer, the Judge may impose an appropriate sanction, which may include an order requiring payment of all reasonable expenses, including attorney's fees, caused by the refusal or failure to confer.

[Emphasis added with underline].

It is entirely improper to impose issues like this on the Court and the Plaintiffs without using the meet-and-confer process to narrow the issues. This is particularly troubling since the case has a substantial history of issues being resolved entirely or at least substantially narrowed through the use of that process. Waiting until 10:03pm ET on September 10, 2026 [the eve of the dispute deadline]to fire out "kitchen sink" style briefs to Plaintiffs' counsel without following the process is prejudicial and wrong, and Meta's request for relief should be summarily denied.

When Meta sent its portion of this brief to Plaintiffs, there were blanks for the dates and outcomes of the meet and confer. A more elegant proof of Meta's disregard for the rules and the time of the other Parties and the Court is hard to imagine. As the Court put it its September 10, 2026 order [*see* Chicken Soup Dkt. No. 127], today "is a big day." But it is not a day to abandon the rules and export problems into other Parties', or the Court's lap, because matters were not previously raised in a timely fashion.

This issue has been squarely addressed. Where a party "provided Defendants with less than 24 hours to respond to his meet-and-confer letter on the eve of the discovery cutoff….[the] minimal meet-and-confer efforts are insufficient and warrant denial of the Motion to Compel" *Baker v. Cnty. of Sonoma*, No. 08-03433 EDL, 2010 WL 99088, at *1 (N.D. Cal. Jan. 6, 2010). The same result is required here.

Plaintiffs have asked Meta not to file anything until complying with the Rule. The response below is not a substitute for a meet and confer. *Baker*, *supra*. "Sending a letter to the opposing party demanding compliance with a discovery request is not what this Court regards as an earnest attempt to "meet and confer" on the issues. Rather, a live exchange of ideas and opinions is

required. " *Soto v. City of Concord*, 162 F.R.D. 603, 623 (N.D. Cal. 1995); *Kitcher-Tucker v. City & Cnty. of San Francisco*, No. 21CV09500EMCLJC, 2024 WL 1432870, at *2 (N.D. Cal. Apr. 2, 2024) (Motion to compel denied where moving party failed to meet and confer).

All that said, the fact that Meta is objecting to preliminary and general objections being stated at this stage of the game is remarkable. Attached, as one example among many, are Meta's Second Supplemental Responses to Plaintiffs' First Set of Interrogatories, served on September 4th. Meta does not finish with its boilerplate objections until *halfway down the seventh page.* **Exhibit A**. In every case, as to every Rog, Meta objects to the definitions, to vagueness, to ambiguity, to overbreadth. Meta's complaint about these kinds of objections is utterly hollow in view of its own persistent use of the same technique. These kinds of general objections are typically ignored in interpreting a response, but that doesn't stop litigants from clearing their throats with them. It makes no sense to ask the Court to wade into them in this on particular instance, or to apply them to hundreds of individual requests.

Meta issued hundreds of RFAs in the case and appears to have created them mechanically and without due care. The fact that Meta felt it would have to define numerous terms in unusual ways is the first clue that it did not carry its burden in framing simple and direct requests.

Meta first complains that Chicken Soup wholesale refused to answer Requests Nos. 294 through 388, which ask Chicken Soup to admit, work by work, that one or more third parties wrote one or more portions of a named asserted work, each identified by title and copyright registration number. Chicken Soup properly responded to each after making applicable objections: "Plaintiff cannot truthfully admit or deny the Request as phrased." Rule 36(a)(4) does in fact permit this. Chicken Soup explained stating,

> Specifically, Plaintiff objects that the defined term "THIRD PARTIES" renders the Request vague and ambiguous because THIRD PARTIES excludes YOU, while YOU is defined collectively to include not only Plaintiff but also numerous natural persons associated with Plaintiff, including its officers, employees, and agents. Some of those persons may have authored portions of the ASSERTED WORK. Accordingly, the Request improperly assumes that a person who authored a portion of the ASSERTED WORK necessarily constitutes either "YOU" or a "THIRD PARTY" under Meta's definitions, when those defined categories do not clearly or unambiguously correspond to the authorship of the work. Plaintiff therefore cannot determine from the Request which authors Meta intends to characterize as "THIRD PARTIES" or, consequently, the particular matter as to which an admission is sought.

In Meta's second example related to RFAs 37 and 38, Meta's own corporate representative uses the term "dataset" both to refer to compilations of data downloaded from the internet and to Meta's various versions of the data that it "curates" before training its AI. **Exhibit B** (30(b)(6) deposition of Shaun Lindsay at *e.g.* 28:15-29:3, 38:9-39:8). Plaintiffs cannot and will not admit that these Meta-created datasets were not created by Meta. As to what Meta calls the "data source," Libgen, Plaintiffs don't know whether Meta was involved in creating it or not. **Exhibit B** (Lindsay Dep. Transcript at 63:21-64:9). So Plaintiffs' responses to Meta's requests about the creation of datasets were entirely proper and frankly represented more attention paid by Plaintiffs in responding than Meta expended in firing out over 1,000 RFAs across the Three C's Plaintiffs. RFA

38 then mischaracterizes Plaintiffs' relevant contentions by seeking an admission about a negative proposition that does not accurately or completely reflect Plaintiffs' positions regarding the creation, compilation, or provenance of the Books3 dataset.

Even worse for Meta here, its definitions are not merely objectionable as seeking to alter the commonly-understood meaning of words, they are specifically destructive of the comprehensibility of its RFAs. For example, it's definition of "YOU" includes all of the Plaintiff's "parents, subsidiaries, predecessors, successors, divisions, imprints, and all officers, directors, employees, agents, attorneys, and other persons acting or purporting to act on its behalf." So who does the admission or denial actually relate to? It is a definition that, on its face, is problematic. For example, RFA No 1 asks "Admit that YOU are unaware of any lost sales of any ASSERTED WORK due to any conduct" but the "YOU" could apply to any number of persons' awareness of lost sales, including employees, agents, attorneys, experts or *any* "other [unidentified] persons acting or purporting to act" on their behalf." RFA No. 58 is another telling example. It asks, "Admit that YOU are not aware of any DOCUMENTS EVIDENCING that Meta distributed the Bibliotik dataset to any THIRD PARTY." Plaintiff denied the RFA based on a normal construction of the term YOU (the named Plaintiff), but objected to Meta's definition because of the wide-net of persons that could be implicated by Meta's overreaching term.

In looking at Meta's other example regarding lost sales, Plaintiffs believe that they have lost at least the sales to Meta they should have had when Meta pirated their books rather than buy or license them and this is sufficient to deny the Request as framed.

The fact that Meta is seeking a court order on *hundreds of RFAs* when it does not bother to even discuss more than a few of them in its brief is indicative of the same carelessness toward, and intention to impose burdens on, the Court that it has shown to the Plaintiffs. The remedy for an RFA that is improperly denied is to seek the costs of proving the information at trial. Fed.R.Civ.Pro. 37(c)(2) under the circumstances the Rule defines. Meta asked its questions the way it wanted to and got its answers. What the Plaintiffs declined to admit, they have denied. The fact that its questions were so poorly framed that Meta doesn't know what to do with some of the answers is neither the Plaintiffs', nor the Court's problem.

Dated: September 11, 2026

By: /s/ Kyle N. Smith

Respectfully submitted,

By: /s/ Lauren E. Martin